(No. 2036—)

MAURICE RIECHMAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 12, 1940.*

Jos. B. McGLYNN, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The claimant in this case seeks damages for injuries sustained by him while in the performance of his duties as a State Highway Patrolman for the State of Illinois.

It appears from the complaint that on August 21, 1931, claimant was riding a motorcycle north on State Route No. 112 near the junction of that route with State Route No. 160 near Edwardsville, Illinois, being on his way to Springfield, Illinois, under orders to perform his duties as patrolman at the State Fair. Claimant alleges that he was traveling between twenty and twenty-five miles per hour while making a turn off of Route No. 112 onto Route No. 160; that a Buick Sedan being driven south on Route No. 160 approached the intersection with Route No. 112 as claimant made the turn; that the claimant swerved to the left side of the road; that in an attempt to avoid a collision with the automobile, which was being driven by a man named Meyer, claimant swung his motorcycle sharply to the right, and in doing that, his right foot-board struck the concrete, tipping claimant back to the left and throwing his motorcycle directly in the path of Meyer's car.

It further appears from the complaint that the Buick car struck the rear part of claimant's motorcycle turning the

motorcycle over on claimant's left leg, causing claimant to sustain a compound fracture of his left leg, causing both pelvic bones to be broken and the left hip and sacrum to be fractured. Claimant charges that as the result of the injury he was totally and permanently prevented from following his former occupation of shoe-worker, and that he is permanently and partially disabled from following any other occupation for life.

Claimant states that no other claim on account of said injuries has been made to any State Department or State Officer or to any person, corporation or tribunal; that he has not received any payment from any person, firm or corporation of any sum whatsoever for or on account of said injuries so sustained; that no person, firm or corporation other than claimant has any interest whatsoever in this claim. Claimant claims damages in the sum of Five Thousand Dollars ($5,000.00).

This court has repeatedly held that State patrolmen, such as claimant, come under the Compensation Act.

This claim was filed on December 28, 1932, and it is alleged that the injuries were received on August 21, 1931. Testimony was taken at various times on up to 1937. The State, by and through the Attorney General filed its Brief and Argument on November 15, 1939. This court has entered an order requiring claimant to file a brief, but he has seen fit to ignore the order.

From the depositions taken, and the State records, it is apparent that claimant's injuries arose out of, and in the course of his employment, and that this court has jurisdiction, and it appears that the State had notice of the accident. It also appears from a report of the Division of Highways dated January 11, 1933 that claimant was paid his salary during his temporary total disability. It appears from the evidence that claimant received $175.00 per month as compensation for his services. The claimant himself testified (Trans. of Jan. 7, 1933, Page 8 and Trans. of July 9, 1933, Page 4) that he had been paid his salary in the amount of $175.00 per month from the date of his injury to the date when he was able to return to his work, about October 1, 1932. We have heretofore held that such payments for non-productive time should be considered as payments of compensation, and payments of compensation constitute a waiver of claim within six months, so

it appears that the jurisdictional requirement of Section 24 of the Compensation Act is complied with. The accident occurred on August 21, 1931 and the claimant's temporary total disability continued until approximately October 1, 1932. The claim was, therefore, filed within one year after the last payment of compensation, having been filed December 28, 1932.

This court has held that highway maintenance patrolmen or policemen are entitled to the benefits of the Workmen's Compensation Act. See *Church, et al.* vs. *State,* 7 C. C. R. 256; *Lightner* vs. *State,* 8 C. C. R. 354 and *Ferguson* vs. *State,* 8 C. C. R. 589.

It is admitted that claimant was paid at the rate of $175.00 per month during the entire period of his disability, and after he was able to return to work. The evidence shows that the claimant had been employed in the same capacity and at the same rate of pay for more than a year immediately prior to the time of his accident; and that he had one child under the age of sixteen years at the time of the accident. (Trans. of testimony dated Jan. 7, 1933, Page 5.) The proper compensation rate to the claimant would be $15.00 per week. From August 21, 1931, the date of the claimant's accident, to October 1, 1932, which was about the date that claimant returned to work, is a period of 58 weeks. Compensation for temporary total disability for a period of 58 weeks on a basis of $15.00 per week amounts to $870.00, which is the sum which should have been paid to the claimant. From August 21, 1931, the date of the injury, until he returned to work on October 1, 1932, a period of 13¼ months elapsed, for which claimant received $2,318.75. Deducting the sum of $870.00, which is the proper amount of compensation payment for the period, from the sum of $2,318.75, leaves a balance of $1,448.75 over-payment to the claimant for temporary total disability.

This court has also held that the amount of over-payment for temporary total disability is allowable as a credit to the employer when called upon to pay specific loss or partial or total permanent disability. *Blanton* vs. *State,* 10 C. C. R. 302, and *Johnson* vs. *State,* 10 C. C. R. 87. In *Wetherby* vs. *State,* opinion rendered September 13, 1939, we held that the overpayment for non-productive time is allowable as a credit both as against specific loss and medical bills paid by the employee.

It also appears from the record (Page 6, Trans. of Jan. 7, 1933) that the State has paid the hospital bills necessitated by the claimant's injury; that it paid the sum of $268.30 to the hospital located in Granite City, and the sum of $284.25 to the hospital located in Belleville. It also appears that the State paid Dr. Berry the sum of $95.00 and Dr. Furguson the sum of $125.00 for services rendered to the claimant resulting from the accident in question. The claimant testified that the bill of Dr. Klinefelter and Dr. McKelvey in the amounts of $200.00 and $100.00 respectively had not been paid to his knowledge and Dr. McKelvey verified such non-payment, but it now appears that this detail has been taken care of as shown by the claimant's testimony (Tran. Page 6, dated July 9, 1935). In this regard, the State paid out the sum of $1072.55, for hospital and doctors' bills.

The law in effect at the time of claimant's injury provided: for the loss of a leg or the permanent and complete loss of its use, 50 per centum of the average weekly wage (or $15.00, which is the maximum,) during 190 weeks. In this case the weekly payments would amount to $15.00 per week, and the total compensation for the loss of use of the leg would amount to $2850.00. The claimant was, therefore, over-paid slightly more than 50% of the amount payable for permanent and complete loss of the use of his leg. Dr. S. W. McKelvey testified that he had suffered a 33-1/3 per cent disability, and thought that this disability would be lessened 10 per cent, with the resulting disability 23 per cent. Dr. John Patrick Murphy testified to a 30 to 35 per cent disability in claimant's left leg, with a 10 to 15 per cent disability in his back, based principally on the limitations of flexion in the back. Any disability in the back is not payable on a basis of specific loss but is payable on a basis of partial permanent disability, which is computed within the statutory limits, as 50 per cent of the difference in the injured employee's earning power before and after the injury.

We do not find sufficient evidence upon which to base any award for partial permanent disability.

From the testimony of the doctors, it is obvious that claimant did not receive a 50 per cent disability to his leg, and the testimony of Dr. Murphy in regard to claimant's back, should be disregarded. The claimant has actually received an over-payment which would equal more than 50 per cent

disability to his leg. Even if the 15 per cent disability of the claimant's back would be computed on the same basis as the leg, and were added to the disability of the claimant's left leg, still the 15 per cent plus the 35 per cent would only amount to 50 per cent. It would appear that the claimant has received all the benefits to which he would be entitled.

For the foregoing reason, an award will be denied.